IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CLIFTON ORLANDO SOLOMON                                              PLAINTIFF

v.                              Civil No. 4:16-cv-04054

CORPORAL GRIFFIN;
STEVEN KING; WARDEN
BRAZELL; SHERIFF RON
STOVALL; and CORPORAL
T. HANNING                                                           DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed *pro se* by Plaintiff, Clifton Orlando Solomon, under 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment filed by Defendants Corporal Griffie,[1] Warden Brazell, Ron Stovall, and Corporal T. Hanning. (ECF No. 29). Plaintiff has filed a Response. (ECF No. 40). The Court finds this matter ripe for consideration.

### I. BACKGROUND

Plaintiff filed his Complaint on June 29, 2016. (ECF No. 1). On July 27, 2016, Plaintiff filed a Supplement to his Complaint clarifying his claims. (ECF No. 11). Plaintiff is suing Defendants Griffie, Brazell, Stovall, and Hanning in both their individual and official capacities.[2] Plaintiff seeks compensatory and punitive damages and states "I am seeking that all be removed from Miller county Jail and make this a better Jail." (ECF No. 1).

On March 24, 2016, Plaintiff was arrested and booked into the Miller County Detention Center ("MCDC"). At the time Plaintiff filed his Complaint he was a pre-trial detainee. Plaintiff alleges his constitutional rights were violated when Defendant Griffie, without just cause, ordered a lock down of Plaintiff's entire pod for three days without allowing him access to a phone or

---
[1] Plaintiff incorrectly identified Defendant Griffie as "Griffin" in his Complaint.
[2] Plaintiff has also named Nurse Steven King as a Defendant in this lawsuit. Defendant King has filed a Motion for Summary Judgment (ECF No. 25) which the Court will address in a separate order.

television. Plaintiff also alleges his rights were violated because the MCDC does not provide drinking water or exercise equipment during recreational time and there are no MCDC officers present to protect inmates during the hour of recreation. In addition, Plaintiff asserts that, while a pre-trial detainee, he was housed with inmates who had been convicted of crimes. Plaintiff claims that this policy is unconstitutional.

Plaintiff alleges that Defendant Hanning violated his civil rights when he "[i]nterfeared [sic] with grievance procedure[.]" (ECF No. 1, p. 5). Plaintiff also claims his rights were violated because "Miller County has the most (Improper grievance procedure) thire [sic] is no change of command or even a proper procedure that the grievance go through[.]" (ECF No. 11, p. 2). As for Defendants Brazell and Stovall, Plaintiff claims "[they] support officer who abuse thire [sic] power while [they] is not on the facility. [They] also has knowledge of officer abuseing [sic] thire [sic] power in which supports cruel and unusual punishment[.]" (ECF No. 1, p. 7).

Defendants argue they are entitled to summary judgment because: (1) there is no individual capacity liability based on *respondeat superior* for Defendants Stovall and Brazell; (2) Plaintiff was afforded his rights to due process; (3) there is no constitutional right to the answering of grievances; (4) Plaintiff was not subjected to unconstitutional conditions of confinement; (5) Defendants are entitled to qualified immunity; and (6) there is no basis for official capacity liability. (ECF No. 29).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words,

2

there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

**A. Defendants Stovall and Brazell**

Plaintiff claims Defendants Stovall and Brazell violated his constitutional rights because they support other MCDC officers who abuse their power. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that each defendant acted under color of state law and that he or she violated a right secured by the constitution. *West v. Atkins*, 487 U.S. 42 (8th Cir. 1999).

3

The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). To establish liability under § 1983, the plaintiff must "plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). "A supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994).

In this case, Plaintiff has not alleged that Defendants Stovall or Brazell were personally involved in any of the alleged violations of his rights. He only claims these Defendants had knowledge of other's actions and "supported" them—this is insufficient to establish § 1983 liability. Accordingly, Plaintiff's individual capacity claims against Defendants Stovall and Brazell fail as a matter of law.

### B. MCDC Grievance Procedure and Defendant Hanning

Plaintiff claims the entire grievance procedure at the MCDC is "improper" because there is no real chain of command and grievances are not processed or answered as they should be. Plaintiff complains that "the grievance are elctronicly [sic] stored in a system call (Jailmail) this system allow all staff of Miller County (Access) to view all grievance and medical request as well e.mail [sic] message[.]" Plaintiff also alleges that Defendant Hanning violated his constitutional rights when he allegedly "interfered" with Plaintiff's grievance procedure at the MCDC.

The law is clear that in the context of a prison system, an inmate grievance procedure is not constitutionally required. *See Spencer v. Moore*, 638 F.Supp. 315 (E.D. Mo. 1986). If the county or state elects to provide a grievance mechanism, violations of its procedure do not deprive prisoners of federal constitutional rights. Moreover, it is well settled that there is no constitutional right requiring jail officials to answer grievances filed by an inmate. *See Buckley v. Barlow*, 997

4

F.2d 494, 495 (8th Cir. 1993). Accordingly, Plaintiff's dissatisfaction with the MCDC's grievance procedure and Defendant Hanning's failure to process or timely respond to grievances does not state a constitutional claim and Defendants are entitled to summary judgment on these claims.

### C. Lockdown by Defendant Griffie

Plaintiff alleges Defendant Griffie violated his constitutional rights when he locked down Plaintiff's entire pod for three days resulting in the suspension of Plaintiff's phone and television privileges.[3] The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property and those who seek to invoke its procedural protection must establish that one of these interests is at stake. *See Vitek v. Jones*, 445 U.S. 480, 493-94 (1980). Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all. *See Gerstein v. Pugh*, 420 U.S. 103 (1975).

Prison officials have broad administrative and discretionary authority over the institutions they manage. Broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

According to the affidavit of Golden Adams, a Lieutenant at the MCDC, in early May 2016, officers smelled what they suspected to be synthetic marijuana coming from the Max B Pod where Plaintiff was housed. (ECF No. 31-2). Upon further investigation, MCDC officers discovered contraband in the pod but were unable to identify who it belonged to because it was in a common area. The Max B Pod was locked down for five days while MCDC officials, including

---

[3] The loss of phone and television privileges will be addressed in the next section discussing conditions of confinement.

Defendant Griffie, investigated who was responsible for bringing the contraband into the MCDC. During this time, phone and television privileges were suspended for all inmates in the pod. Ultimately, MCDC officials were unable to determine who the contraband belonged to. Neither Plaintiff nor the other inmates in the pod were disciplined and they regained all privileges following the investigation. (ECF No. 31-2).

The facts are not in dispute. Defendant Griffie assisted in the lockdown of Plaintiff's pod based on suspicion of illegal drug use. The lockdown of Plaintiff's pod was lifted as soon as the MCDC officers concluded their investigation. Upon consideration, the Court finds that no reasonable jury could return a verdict for Plaintiff on this claim and that Defendant Griffie's involvement in the lockdown was reasonable and necessary under the circumstances in order for the MCDC to maintain discipline and institutional security. Accordingly, Plaintiff's individual capacity claim against Defendant Griffie relating to the lockdown fails as a matter of law as there is no genuine issue of material fact.

**D. Conditions of Confinement**

Plaintiff claims that between March 24 and May 27, 2016—the date he was transferred to the Arkansas Department of Correction—he was subjected to the following unconstitutional conditions of confinement by Defendants Griffie and Hanning: (1) loss of phone and television privileges for three days during a lockdown of his pod; (2) as a pre-trial detainee he was housed with inmates who had already been convicted of crimes; and (3) there was no water or exercise equipment in the MCDC's recreation area and no MCDC officers were present to protect inmates during the hour of recreation. (ECF No. 1).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation

omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

In considering whether conditions of confinement violate an inmate's constitutional rights, the Eighth Circuit has adopted the same legal standard for pre-trial detainees as it applies to convicted inmates. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities." *Id.* "The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Wolfish*, 441 U.S. at 535.

Defendants admit that Plaintiff's phone and television privileges were suspended during a lockdown of his pod. They also admit Plaintiff, a pre-trial detainee, was housed with state and federal inmates who had been convicted of crimes. However, according to the affidavit of Al Landreth, the Jail Administrator for the MCDC, when classifying inmates the MCDC reviews an inmate's arrest records, the Arkansas Crime Information Center history, and criminal backgrounds. All of the data is used to give an inmate a score of minimum, medium, or maximum. Inmates are then housed in an area consistent with their score. (ECF No. 31-1, p. 2).

7

With respect to Plaintiff's allegations regarding lack of water, Defendants acknowledge there is no water fountain in the recreation yard but state that inmates are allowed to take a cup of water outside during the one hour of recreation time. Defendants also state that "[d]uring recreation, there is a basketball goal and room for inmates to exercise." (ECF No. 31-1, pp. 1-2). As for Plaintiff's allegation that no MCDC officers are present to protect inmates during the hour of recreation, Al Landreth states that:

> During recreation time when inmates go outside, inmates are monitored from the inside, there is a camera that officers can watch or they are physically watched. An officer is always watching them. The Plaintiff was not assaulted during his incarceration at the Miller County Detention Center.

(ECF No. 31-1, p. 2).

Even construing the facts in the light most favorable to Plaintiff, he has not shown his living conditions at the MCDC denied him of the minimal measure of life's necessities nor has he demonstrated the issues he complains of posed a substantial risk of serious harm to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In addition, the Court finds any discomfort Plaintiff may have suffered between March and May of 2016 to be *de minimis*, and as a result does not implicate the Constitution. *See Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Accordingly, Plaintiff's conditions of confinement claims against Defendants in their individual capacities fail as a matter of law.[4]

### E. Official Capacity Claims

As noted above, Plaintiff is suing Defendants in both their official and individual capacities. Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are

---

[4] Because the Court finds there has been no violation of Plaintiff's constitutional rights, it is not necessary to address the issue of qualified immunity in relation to any of Plaintiff's claims.

"functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, an official capacity claim against Defendants is treated as a claim against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

In the present case, Plaintiff does not claim that his alleged injuries were inflicted pursuant to an official custom, policy, or practice. Accordingly, Plaintiff's official capacity claims fail because Plaintiff has not shown that a policy, practice, or custom of Miller County, Arkansas, caused a violation of his constitutional rights.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 29) should be and hereby is **GRANTED**. Plaintiff's claims against Defendants Griffie, Brazell, Stovall, and Hanning are **DISMISSED WITH PREJUDICE**. A Judgment consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 6th day of February 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge